UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARK BRENNER,<br><br>               Plaintiff,<br>    v.<br><br>HANOVER INSURANCE<br>COMPANY,<br><br>               Defendant. | NO:  4:14-CV-5099-RMP<br><br>ORDER DENYING MOTION FOR<br>SUMMARY JUDGMENT |

Before the Court is Defendant's Motion for Summary Judgment, ECF No.

11.  The Court has reviewed the motion, Plaintiff's response, Defendant's reply,

and the supporting documents.  The Court is fully informed.

BACKGROUND

On October 7, 2013, Plaintiff, Mark Brenner ("Brenner"), learned that

sewage was backing up into his place of business.  ECF No. 14, Ex. 1 at 2.

Plumbers were hired who unsuccessfully attempted to remove any blockage from

1    the sewer pipe using a plumber's snake and a high-pressure water jet system.  ECF

2    No. 14, Ex. 1 at 2.

3            On or about October 17, 2013, Brenner realized that inexpensive options

4    would not resolve the issue and contacted his insurance agent at The Partners

5    Group.  ECF No. 14, Ex. 1 at 2.  On the same day, the agent notified Defendant,

6    Hanover Insurance Company ("Hanover"), Brenner's insurer, about the claim.  *See*

7    ECF No. 13 at 1.  Kathy Gleason, a property adjuster for Hanover, called Brenner

8    on October 18 and 21 to discuss the claim.  ECF No. 13 at 1, 2.

9            Meanwhile, Brenner hired Roto-Rooter to repair the problem.  ECF No. 18

10   at 2.  The repair required the excavation of a substantial amount of earth because

11   the sewer pipes were buried approximately 15 to 20 feet below ground.  ECF No.

12   14, Ex. 1 at 3.  The project was completed near the end of October 2013.  ECF No.

13   14, Ex. 1 at 3.

14           On October 24, 2013, Brenner returned Ms. Gleason's telephone calls and

15   informed her that the repair work had been completed.  ECF No. 13 at 2.  Brenner

16   stated that he did not know the cause of the pipe break.  *See* ECF No. 13 at 2.

17   Brenner sent Ms. Gleason a copy of the repair invoice from Roto-Rooter, which

18   also did not explain the cause of the pipe break.  *See* ECF No. 13, Ex. 3.

19           Ms. Gleason states that she discussed the repair with John Door, a

20   representative from Roto-Rooter, and that he told her that seven feet of sewer line

1    were missing.  ECF No. 13 at 3.  According to Ms. Gleason's account of what Mr.

2    Door said, the building's sewer line never had been connected to the city's line.

3    ECF No. 13 at 3.  Hanover wrote to Brenner on November 18, 2013, to inform him

4    that "[t]he policy would not provide coverage to access and install a run of line that

5    never existed."  ECF No. 13, Ex. 4 at 1.

6            On January 16, 2014, Roto-Rooter sent a letter to Hanover with a different

7    explanation of the cause of the damage:

8            In our professional opinion the pipe had to have been damaged and
             pulled apart in some other way from an unknown source.  This could
9            have been done from other work being performed in the proximity of
             this pipe such as other utilities being installed or even ground
10           movement.  The exact reason for the damage cannot be determined,
             however deterioration and the lack of original piping can be ruled out.

11
     ECF No. 13, Ex. 5.  Hanover thereafter sent Brenner a new letter denying
12
     coverage, this time on the basis of policy exclusions for earth movement and
13
     negligent work.  ECF No. 13, Ex. 6.
14
             Brenner's counsel then sent a letter to Hanover, arguing in part that an
15
     additional endorsement in Brenner's policy covered the loss.  ECF No. 13, Ex. 7.
16
     In response, Hanover repeated its prior grounds for denying coverage and added
17
     that Brenner materially had breached the policy conditions by not providing
18
     Hanover the opportunity to inspect the damaged pipe.  ECF No. 13, Ex. 8.  No
19
     damaged sections of pipe were saved, and although Hanover was given pictures
20
     that Roto-Rooter had taken during the repair, Hanover contends that the pictures do

not depict the section of pipe that allegedly was broken. *See* ECF Nos. 13, Ex. 8; 25 at 2; 18, Exs. A-G.

Brenner filed this action in Benton County Superior Court, seeking relief including a declaratory judgment stating that the policy covers his insurance claim. ECF No. 14, Ex. 1 at 1, 6. Hanover removed the action to this Court. ECF No. 1.

ANALYSIS

Hanover contends that summary judgment is appropriate because none of the proposed theories for the damage would be covered by Brenner's policy and because the claim is barred by the absence of any physical evidence showing damage to the sewer pipe. ECF No. 11. Brenner responds that the cause of the damage and whether the damage is covered by the insurance policy remain disputed issues of material fact. ECF No. 17.

*Summary Judgment Standard*

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The party asserting the existence of an issue of material fact must show "'sufficient evidence supporting the claimed factual dispute . . . to require a jury or

ORDER DENYING MOTION FOR SUMMARY JUDGMENT ~ 4

judge to resolve the parties' differing versions of the truth at trial.'" *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). In deciding a motion for summary judgment, a court must construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31.

The Court applies state law to the interpretation of insurance policies, which are construed as contracts. *State Farm General Ins. Co. v. Emerson*, 102 Wn.2d 477, 480 (1984).[1] Washington courts apply a two-step process to determine

---

[1] When exercising diversity jurisdiction, federal district courts apply the choice of law rules of the forum state. *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005). Washington state courts interpret parties' rights under an insurance policy according to the law of the state with the most significant contacts with the policy. *Dairyland Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 41 Wn. App. 26, 30-31 (1985). The parties refer to Washington law. The Court agrees that Washington law governs.

whether insurance coverage exists. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 731 (1992). "The insured must show the loss falls within the scope of the policy's insured losses. To avoid coverage, the insurer must then show the loss is excluded by specific policy language." *Id.* Insurance policies are interpreted in accordance with how they would be understood by an average person. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Zuver*, 110 Wn.2d 207, 210 (1988).

Hanover asserts that there is no genuine dispute that Brenner's policy does not cover damage caused by either of the two proffered theories: that the damage resulted from worker negligence or ground movement. ECF No. 11 at 16-19. However, the record does not establish definitively what caused the damage. According to Hanover, Roto-Rooter first stated that the building's line never had been connected, and the subsequent letter from Roto-Rooter indicates that the company had not ascertained the cause of the damage. ECF Nos. 13 at 3; 13, Ex. 5. Hanover alternatively contends that summary judgment is appropriate because the true cause of the damage cannot be determined, in light of Roto-Rooter's statement to that effect. However, while stated opinions may be *evidence* of the cause of the damage and whether the cause can be determined, such statements certainly do not resolve the issues beyond legitimate dispute.[2]

---

[2] Curiously, Hanover objects that it would be an improper use of hearsay evidence to rely on Roto-Rooter's letter to *defeat* the motion for summary judgment, while

1    Hanover also argues that summary judgment is appropriate because of the

2    policy's exclusion from coverage of loss or damage to property "where there is no

3    physical evidence to show what happened to the property . . . ."  ECF No. 11 at 20

4    (emphasis omitted).  Although no damaged pipe was produced for Hanover's

5    inspection, the fact that Brenner's property was damaged is undisputed, and

6

7

8    also basing its motion in part on the truth of Roto-Rooter's statement that the cause

9    of the damage cannot be determined.  ECF No. 25 at 6 n.2; *see also* ECF No. 25 at

10    4-5 ("Plaintiff's own statements and arguments that causation cannot be

11    determined supports preclusion of coverage pursuant to the above unambiguous

12    policy provisions.").  On a motion for summary judgment, the Court considers

13    whether the substance of the proffered evidence could be admissible at trial, not

14    whether evidence would be admissible in its current form.  *Fraser v. Goodale*, 342

15    F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not

16    focus on the admissibility of the evidence's form.  We instead focus on the

17    admissibility of its contents.").  Although statements as presented in Roto-Rooter's

18    letter may constitute inadmissible hearsay evidence, there is no apparent reason

19    why the drafter of the letter could not testify in court to overcome any hearsay

20    objection.

presumably additional physical evidence of the damage existed when Hanover was notified of the issue.  This is not a suitable basis for summary judgment.

Accordingly, **IT IS HEREBY ORDERED** that Hanover's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** this 11th day of March 2015.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

ORDER DENYING MOTION FOR SUMMARY JUDGMENT ~ 8